## ARMSTRONG v. CITY OF TULSA et al. and

## OKLAHOMA NAT. GAS CO. et al. v. ARMSTRONG.

Nos. 14433, 14686 (Consolidated)—Opinion Filed May 13, 1924.

(Syllabus.)

**1. Negligence — Damages — Burden of Proof.**

In order to recover damages for an injury because of negligence the burden is on the plaintiff, not only to show negligence, but to prove that such negilgence was the proximate cause of the injury.

**2. Same — Elements of Actionable Negligence.**

To constitute actionable negligence, where the wrong is not willful and intentional, three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff approximately resulting from such failure.

**3. Same — Defective Conditions — Liability of Independent Contractor.**

The general rule is that after an independent contractor has turned the work performed by him over and it has been accepted by the proprietor, the contractor incurs no further liability to third parties by reason of the condition of the work, but the responsibility, if any, for maintaining or using it in its defective condition is shifted to the proprietor. The contractor remains liable, if at all, only to the proprietor for a breach of his contract.

**4. Same — Relief from Liability by Acceptance of Work.**

All the acceptance that is required by a proprietor of the work of a contractor, in order to relieve the contractor of liability for injuries to third persons after the acceptance is a practical acceptance after the completion of the work; a formal acceptance not being required.

**5. Municipal Corporations — Liability for Injuries From Defective Streets.**

Ordinarily, a municipality is not liable for an injury caused by a defect in a public street, except where it has neglected some duty in that respect after it has had notice

of the defect, or unless the facts and circum-stances are such as to warrant an inference of notice or knowledge of such defect, or the defect had existed for such a length of time that by the exercise of reasonable diligence it might have been known and corrected.

### 6. Same—Negligence.

A municipality is charged with the duty of maintaining streets in a reasonably safe condition for travel; this duty involves the anticipation of defects that are the natural and ordinary result of use and climatic in-fluences, and the muncipality may be charg-ed with constructive notice of the existence of such defects by reason of its failure to so anticipate them and its neglect to make sufficiently frequent and careful examina-tions and inspections to enable it to discover them.

### 7. Same—Notice of Defective Conditions— Jury Questions.

Where there is evidence showing that a defective condition of a sewer ditch at va-rious places in a street had existed for a pe-riod of three or four weeks, the question of whether the existence of such defective con-dition for such period of time was sufficient to charge the municipality with notice there-of, and whether, having notice of this condi-tion, it should have anticipated the condition of said ditch at other places, and whether, being charged with notice of the defects in said ditch near the place where an accident occurred, it was charged with notice of like defects at the place of the accident, which ordinary care would have discovered, were questions of fact which should have been submitted to the jury.

### 8. Same—Latent Defects.

If a defect in a street is a latent one, no-tice thereof will not be imputed to the mu-nicipality, provided the defect could not have been discovered by the exercise of ordinary care.

### 9. Same—Jury Questions.

While ordinary care must be exercised both as to patent defects and also as to la-tent defects, yet, if there is no reason to sup-pose the existence of latent defects, they need not be searched for. However, it cannot be said, as a matter of law, that there was no reason to suppose the existence of such defects, and they need not be searched for, but this, as well as whether such defects could have been discovered by the exercise of ordinary care, and whether the munici-pality exercised such care, were questions of fact for the determination of the jury.

### 10. Trial — Demurrer to Evidence—Consid-eration.

The test to be applied to a demurrer to the evidence is that such demurrer admits all of the facts which the evidence in the slightest degree tends to prove and all the inferences and conclusions which may be reasonably and logically drawn therefrom, and the plaintiff is entitled to every infer-ence which the evidence, considered in the light most favorabe to him, reasonably tends to prove.

### 11. Negligence—Province of Jury.

In an action for injury caused by negli-gence, the court should not take the case from the jury except where the facts are such that all reasonable men must draw the same conclusion from them.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by May Armstrong against the City of Tulsa and others. Judgment for defen-dants, and plaintiff appeals. Affirmed in part and reversed in part.

Robinett & Ford, for plaintiff in error.

I. J. Underwood and Harry L. S. Halley, for defendant in error City of Tulsa.

Humphrey & Campbell, for defendant in error Oklahoma Natural Gas Company.

James P. Gilmore, Charles A. Loomis, A. F. Moss, and H. R. Williams, for defendants in error Tibbets & Pleasant.

NICHOLSON, J. May Armstrong brought suit against the city of Tulsa, a municipal corporation, Tibbets & Pleasant, a corpora-tion, and the Oklahoma Natural Gas Com-pany, a corporation, to recover damages for personal injuries alleged to have been sus-tained by her by reason of a defective con-dition of a street in the city of Tulsa. At the conclusion of the plaintiff's evidence, the court sustained the separate demurrers of the defendants thereto, and rendered judg-ment in their favor, from which the plaintiff has appealed.

The evidence discloses that the Oklahoma Natural Gas Company had lowered its gas main at the intersection of Rosedale and Ad-miral streets in the city of Tulsa to a depth of about 10 feet, in order to permit the con-struction of a sewer along Rosedale street above the gas main. The ditch carrying the gas main ran in an easterly and westerly di-rection across Rosedale street. The sewer ditch ran in a northerly and southerly direc-tion across Admiral street. The defendants Tibbets & Pleasant, independent contractors, had constructed the sewer for the city along the west side of Rosedale street. The sewer was laid above the gas main, and the ditches crossed at right angles. These ditches had been filled some three or four weeks before the plaintiff was injured. The streets were

not paved, and there were no sidewalks on said streets at the point where they intersected. There was a beaten path across the street which crossed the sewer ditch at a point where it intersected with the gas main ditch. On the morning of August 16, 1921, the plaintiff was crossing the street in this beaten path, and when she reached the point where the ditches crossed, the earth caved in, causing her to fall a distance of about four feet, as a result of which her left foot was broken and her arm injured. She was confined to her bed for about five months, and was compelled to walk on crutches for several months thereafter.

The plaintiff testified that she had crossed the street, at the identical place where she was injured, about three weeks prior to the day of the accident; that there was nothing on the surface to indicate that the street was unsafe at this place, and that it appeared to be in the same condition on this day that it was in three weeks before.

C. A. Bowen testified that he lived about 55 feet from the street intersection; that the sewer ditch had settled, and there were holes in the street in front of his house; that he had observed the condition of the ditch, and while the surface thereof appeared to be hard, it had been undermined by water flowing down the sewer ditch. He further testified that the city had flooded the street above the intersection, a few days before the accident, and the water had flowed down the sewer ditch; that at the point where the accident occurred the surface was hard, but was undermined by water.

Charles Baird testified that for three or four weeks before the accident the sewer ditch was in bad condition; that water had caused the earth below the surface to settle, but he did not observe that the surface was affected in any way.

An examination of the record convinces us that the court did not err in sustaining the demurrer of the Oklahoma Natural Gas Company, because the evidence wholly fails to show any actionable negligence on the part of this company. It appears that the gas company had lowered its gas main in order that the sewer ditch might be laid; that after this work was completed, the sewer ditch was laid above the gas main. The gas company had filled its ditch, and the evidence shows that its work had been completed three or four weeks before the accident. There is no evidence showing, or tending to show, that the gas company left the ditch unfilled, or that it negligently filled the same, but, to the contrary, it affirmatively appears that the ditch filled by this company was packed and hard from much travel at all places except at the point where the sewer ditch crossed it. Apparently, the only excuse for making the gas company a party defendant was because the sewer ditch caved in at a point where it crossed the ditch of the gas company. There was no evidence that water ran down the gas line ditch, or that it was in any manner unsafe. In fact, the plaintiff failed to prove any fact indicating that the gas company was guilty of negligence in any particular, and in order to recover, the burden was upon the plaintiff to show negligence on the part of the defendant, and to further show that such negligence was the proximate cause of the injury. Wichita Falls & N. W. Ry. Co. v. Cover, 65 Okla. 110, 164 Pac. 660; Wyman v. Chicago, R. I. & P. Ry. Co., 76 Okla. 172, 184 Pac. 758.

In order that we may determine whether the court erred in sustaining the demurrer of Tibbets & Pleasant to the evidence of the plaintiff, it is necessary to ascertain whether or not this defendant owed to the plaintiff a duty which it failed to perform, because, "to constitute actionable negligence where the wrong is not willful and intentional, three essential elements are necessary: First, the existence of a duty on the part of the defendant to protect the plaintiff from injury; second, failure of the defendant to perform that duty; and third, injury to the plaintiff proximately resulting from such failure." Missouri, K. & T. Ry. Co. v. Wolf, 76 Okla. 195, 184 Pac. 765; Midland Valley R. Co. v. Williams, 42 Okla. 444, 141 Pac. 1103; St. Louis & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083; Chicago, R. I. & P. Ry. Co. v. Foltz, 54 Okla. 556, 154 Okla 519; Chicago, R. I. & P. Ry. Co. v. Nagle, 55 Okla. 235, 154 Pac. 667. And this depends upon whether the work had been turned over to and accepted by the city, for, subject to some qualifications which are not present here, the general rule is that after the contractor has turned the work over and it has been accepted by the proprietor, the contractor incurs no further liability to third persons by reason of the condition of the work, but the responsibility, if any, for maintaining or using it in its defective condition is shifted to the proprietor. The contractor remains liable, if at all, only to the proprietor for a breach of his contract. Thompson on Negligence, vol. 1, sec. 686, and cases cited; Memphis Asphalt & Paving Co. v. Fleming (Ark.) 132 S. W.

222; First Presbyterian Congregation v. Smith, 163 Pa. 561, 30 Atl. 279, 26 L. R. A. 504; Daugherty v. Herzog, 145 Ind. 255, 44 N. E. 457, 32 L. R. A. 837, 57 Am. St. Rep. 204; Salliotte v. King Bridge Co., 122 Fed. 378, 58 C. C. A. 469, 65 L. R. A. 620. The evidence fails to show that the city had formally accepted the work, but it is shown that the sewer ditch had been finished some three or four weeks before the accident, and that the street had been open to the public for that length of time, and it has been held that all the acceptance that is required by a proprietor of the work of a contractor, in order to relieve the contractor from liability for injury to third persons after the acceptance, is a practical acceptance after the completion of the work; a formal acceptance not being required. Memphis Asphalt & Paving Co. v. Fleming, supra; Read v. East Providence Fire District, 20 R. I. 574. 40 Atl. 760.

There was no evidence showing that the ditch was improperly filled in the first instance, but it appears that defendant left the ditch in a safe condition, and that pedestrians had crossed and recrossed it constantly for at least three weeks prior to the accident; had worn a firm, solid pathway across it, and that the surface of the ditch had been undermined by water flowing down the ditch long after the ditch had been filled and the street open to traffic. It does appear that Tibbets & Pleasant refilled a portion of this ditch north of the place where the accident occurred, a few days before the accident, but the contract between the city and this defendant was not introduced in evidence, and there is nothing in the record indicating that this work was done under the terms of the contract, or that the defendant owed even the city the duty of inspecting or refilling the ditch.

To constitute actionable negligence, it must be alleged and proved that the negligence complained of was the proximate cause of the injury received. Wyman v. Chicago, R. I. & P. Ry. Co. supra. While it was alleged that the proximate cause of plaintiff's injury was the negligence of this defendant and its codefendant, the Oklahoma Natural Gas Company, in leaving the ditches dug by them in an unsafe condition, and that the public was not warned of this condition by lights or rails, as required by city ordinances, yet there was no evidence that the ditch was left in an unsafe condition by this defendant, or that it had in any manner violated any city ordinance. We fail to find any evidence of negligence on the part of

this defendant, hence the trial court did not err in sustaining its demurrer to the evidence.

So far as the demurrer of the city of Tulsa is concerned, a different situation is presented. The city relies upon the well-established doctrine that ordinarily a municipality is not liable for an injury caused by a defect or obstruction in a public street except where it has neglected some duty in that respect, after it has had notice of the defect or obstruction, or unless the facts and circumstances are such as to warrant an inference of notice or knowledge of such defect or obstruction, or that the defect or obstruction had existed for such a length of time that by the exercise of reasonable diligence it might have been known and corrected (28 Cyc. 1384; McQuillen on Mun. Corp., vol. 6, sec. 2726; Bellevue Gas & Oil Co. v. Carr, 61 Okla. 290, 161 Pac. 203); and insists that the evidence offered by the plaintiff was all to the effect that the public generally had been using this street; that it had every appearance of normalcy; that there was nothing to put the pedestrian on guard, much less to constitute constructive notice to the executive officers of the city that there was any defective or dangerous condition existing at this place, and that it was necessary to establish notice to the city before any liability could be proven against it.

It is true that the evidence shows that at the place where the accident occurred the street appeared to be safe for travel, and that pedestrians had worn a beaten path across the ditch at this point, but the evidence also shows that for as great a length of time as three or four weeks prior to the accident the sewer ditch had sunken and caved in at various places near the place of the accident; that there were numerous holes along the ditch; that the surface of the ditch had been undermined by water flowing down the ditch and that this was the condition at the place of the injury. The condition of the ditch was known to the residents of the neighborhood, and in fact the ditch had been refilled at some places only a day or two before the accident. The evidence shows that the city had flooded the street above the place where the accident occurred and that water from the city mains as well as from rains flowed down this ditch.

It was the duty of the city to use ordinary care in keeping the street in a reasonably safe condition for public travel (City of

Tulsa v. Wells, 79 Okla. 39, 191 Pac. 186), and this duty involved the anticipation of defects that are the natural and ordinary result of use and climatic influences (13 R. C. L. 348; Sherwin v. City of Aurora, 257 Ill. 358, 100 N. E. 938, 3 L. R. A. [N. S.]. 1116) ; and the city may be charged with constructive notice of the existence of such defects by reason of its failure to so anticipate them, and its neglect to make sufficiently frequent and careful examinations and inspections to enable it to discover them, 13 R. C. L. 349, and cases cited.

It was not shown that the city had actual notice of the condition of the sewer ditch, but there is evidence indicating that had it exercised ordinary care it would have discovered the dangerous condition of the ditch. Whether the existence of the holes in, and the undermined condition of the ditch near the place of the accident for a period of three or four weeks was sufficient to charge the city with notice thereof; and whether, having notice of this condition, it should have anticipated the condition at the place of the accident, and whether, being charged with notice of the defects in the ditch near the place of the accident, it was charged with notice of like defects at other places along the ditch, including the place where the accident occurred, which ordinary care would have discovered, were questions of fact, which should have been submitted to the jury. City of Dallas v. McAllister (Tex.) 39 S. W. 173.

The city further contends that the defects were latent, and relies upon the rule that "if a defect in a street is a latent one, notice thereof will not be imputed to the municipality, provided the defect could not have been discovered by the exercise of ordinary care. While ordinary care must be exercised both as to patent defects and also as to latent defects, yet if there is no reason to suppose the existence of latent defects, they need not be searched for." McQuillin on Mun. Corp., sec. 2815.

If it could be said that the defect was a latent one, the city was bound to exercise ordinary care to discover such defect, for it cannot be said as a matter of law that there was no reason to suppose the existence of such defect and that it need not be searched for. As to whether or not such defects could have been discovered by the exercise of ordinary care, and whether the municipality exercised ordinary care to discover such defects, were questions for the determination of the jury.

The test to be applied to a demurrer to the evidence is that such demurrer admits all of the facts which the evidence in the slightest degree tends to prove, and all the inferences and conclusions which may be reasonably and logically drawn therefrom, and the plaintiff is entitled to every inference which the evidence, considered in the light most favorable to him, reasonably tends to prove. In an action for injury caused by negligence, the court should not take the case from the jury except where the facts are such that all reasonable men must draw the same conclusion from them. Anthony v. Bliss, 39 Okla. 237, 134 Pac. 1122.

A careful examination of the entire record convinces us that there was sufficient evidence to take the case as to the city of Tulsa to the jury, and that the court erred in sustaining its demurrer to the evidence.

The Oklahoma Natural Gas Company and Tibbets & Pleasant have appealed from the order of the court overruling their motions to modify or vacate the order or judgment of January 20, 1923, in so far as the same purported to overrule, of that date, the motions of the plaintiff for a new trial as to these defendants. and contend that such motions were, in fact, overruled as to them on September 28, 1922; that the appeal was not lodged in this court within six months from the date such motions were overruled, and hence this court is without jurisdiction.

In view of the conclusions heretofore reached, a decision of the question presented by this appeal can be of no practical benefit to the parties, and is unnecessary.

Therefore, the judgment of the trial court in cause No. 14433 in this court is affirmed as to the defendants Oklahoma Natural Gas Company and Tibbets & Pleasant, but as to the city of Tulsa said judgment is reversed and the cause remanded for a new trial. The judgment in cause No. 14686 is affirmed.

JOHNSON, C. J., and McNEILL, HARRISON, and BRANSON, JJ., concur.